

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   NICHOLAS HALKS,                      Case No.:  25-cv-560-DMS-AHG
12                            Plaintiff,
                                          **ORDER GRANTING IN PART AND**
13         v.                             **DENYING IN PART DEFENDANTS'**
                                          **MOTION TO DISMISS**
14   THE KINDLEY LAW FIRM, APC,
     GEORGE KINDLEY, and
15   HAMPARYAN INJURY LAWYERS,
16                            Defendants.
17

18         This matter arises out of a dispute between a Massachusetts lawyer and California

19   lawyers over a referral fee.  Plaintiff, a Massachusetts lawyer who is not a member of the

20   California Bar and has not practiced in California, referred a significant wrongful death

21   case in San Diego to Defendants,[1] who are California lawyers, in which the lawyers agreed

22   Plaintiff would receive "one-third of the total legal fees recovered" by Defendants for

23   referring the case.  Plaintiff—in compliance with Massachusetts Rules of Professional

24   Conduct—obtained written client consent to refer the case to Defendants and receive a

25   referral fee.  Nevertheless, after the case partially settled and Defendants recovered their

26   attorneys' fees from the settlement, Defendants declined to share any of the attorneys' fees

27   _____

28   [1] Defendants include The Kindley Law Firm, APC, George Kindley, and Hamparyan Injury Lawyers.

with Plaintiff because the lawyers failed to obtain written client consent to the "terms of division" of the fees (i.e., the one-third share to Plaintiff), as required by California Rules of Professional Conduct, Rule 1.5.1.  Through this action, Plaintiff seeks one-third of the total attorneys' fees recovered by Defendants and brings claims against Defendants for breach of contract, fraudulent misrepresentation, negligent misrepresentation, and estoppel, among other claims.

Defendants contend Plaintiff's attempt to recover the referral fee "undermine[s] the consumer protection purpose of California Rule of Professional Conduct 1.5.1" and cannot proceed as a matter of law.  Plaintiff argues Defendants cannot use a non-compliant fee-sharing agreement that Defendants themselves drafted as a "shield … to enjoy a windfall" of attorneys' fees that are supposed to be shared by counsel and that the clients—except for the division of fees—approved.  While California courts have yet to decide whether a lawyer practicing in California can avoid a technically non-compliant fee-sharing agreement under Rule 1.5.1 with an out-of-state lawyer not practicing in the state, other courts have addressed the issue under analogous state rules[2] and determined for public policy reasons that such non-compliant agreements are enforceable: "To hold otherwise would encourage non-compliance with the [in-state] Rule[s] [of Professional Conduct] and create incentives for malfeasance among [in-state] lawyers at the expense of out-of-state lawyers."  *Potter v. Peirce*, 688 A.2d 894, 897 (Del. 1997).  This Court agrees.

Pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Motion, ECF No. 7).  Plaintiff filed a response in opposition, (Opp'n, ECF No. 10), and Defendants filed a reply.  (Reply, ECF No. 11).  For the reasons set forth below, the Court finds Plaintiff is not precluded from

---

[2] "All states other than California have adopted rules of professional conduct based upon" the American Bar Association ("ABA") Model Rules of Professional Conduct, *Legal Ethics and Professional Responsibility: Rules*, DRAKE L., https://libguides.law.drake.edu/c.php?g=896184 (last visited July 10, 2025), although California's rules are influenced by the Model Rules.  *Id.*  Many states use identical or similar language and employ parallel numbering to the Model Rules, including California.

enforcing his alleged referral fee agreement with Defendants and has sufficiently alleged breach of contract, fraudulent misrepresentation, negligent misrepresentation, and estoppel claims. Defendants' Motion is granted in part and denied in part.

## I.    BACKGROUND[3]

In November 2019, Dylan Hernandez, a Florida resident and freshman at San Diego State University, tragically passed away after attending a fraternity pledge party. (Complaint, ECF No. 1 ¶ 8). Dylan's family, also Florida residents, contacted Plaintiff, an attorney licensed in Massachusetts, for advice about potential claims against Dylan's fraternity and the California State University System. (*Id.* ¶¶ 9–10). Plaintiff agreed to find legal counsel in the San Diego Area to represent the Hernandez family and Dylan's Estate (collectively the "Hernandez family") in all their claims arising from Dylan's death. (*Id.* ¶ 12).

Plaintiff reached out to at least five law firms located in San Diego and all expressed interest in representing the Hernandez family. (*Id.* ¶ 13). One of those law firms was Defendant The Kindley Law Firm. (*Id.* ¶ 12). During a telephone call on November 11, 2019, Plaintiff spoke with George Kindley regarding the potential referral for representation. (*Id.* ¶ 16). Kindley suggested to Plaintiff that his firm and Defendant Hamparyan Injury Lawyers take on the case due to their combined experience in handling personal injury and wrongful death cases on contingency in California. (*Id.* ¶ 17).

Kindley represented that if the Hernandez family retained the firms, the Kindley and Hamparyan firms would pay Plaintiff a referral fee of one-third the total legal fees recovered from any litigation related to Dylan's death. (*Id.* ¶ 18). The referral agreement was memorialized in subsequent emails between Defendants and Plaintiff. Kindley first wrote on November 11, 2019, "[a]s discussed, when cases are referred to us by another lawyer we do agree to pay referral fees." (Ex. 1, ECF No. 1-2, at 5–6). Kindley followed

---

[3] All facts stated in this Order are derived from Plaintiff's Complaint, which are assumed to be true for purposes of this motion.

up with another email to Plaintiff and confirmed that the Hamparyan firm acknowledged "the 1/3 fee." (Ex. 2, ECF No. 1-3, at 3). Then, on November 22, 2019, Kindley sent Plaintiff another email: "This confirms our agreement to pay you a referral fee of one third of the attorney's fees we are able to collect." (Complaint ¶¶ 28, 30); (Ex. 3, ECF No. 1-4, at 3).

Plaintiff ultimately recommended to the Hernandez family that they retain Defendants. (Complaint ¶¶ 25–27). On November 25, 2019, Defendant Kindley Law Firm emailed Plaintiff an unsigned copy of Defendants' Contingency Fee Agreement with the Hernandez family. The Contingency Fee Agreement provided that Defendants would receive 40% of any recovery by the Hernandez family, (*id.* ¶ 44), that Defendants would jointly represent the family in the San Diego litigation and split the fees, and that a referral fee would be paid to Plaintiff out of Defendants' attorneys' fees award. The Contingency Fee Agreement provided, in relevant part:

> Clients acknowledge that attorneys' fees will be split between the two law firms [Defendants Kindley Law Firm and Hamparyan Injury Lawyers]. This fee splitting shall not increase the total amount of attorneys' fees paid by Clients. Clients have authorized [Defendants] to pay a referral fee to attorney Nicholas Halks as a courtesy and for his efforts assisting Clients.

(Ex. 4, ECF No. 1-5, at 2); (Complaint ¶ 33). Plaintiff discussed with the Hernandez family the referral fee agreement he entered with Defendants, and informed Kindley of this fact by email. (Ex. 5, ECF No. 1-6, at 2). Kindley then represented to Plaintiff that the Hernandez family signed the Contingency Fee Agreement. (Complaint ¶ 35). Based on this course of dealing, Plaintiff was satisfied he had an agreement with Defendants: "Relying on Attorney Kindley's and Kindley Firm's repeated oral and written promises and agreement to a 1/3 referral fee, as well as the Contingency Fee Agreement stating the Hernandez Family had agreed to a referral fee, [Plaintiff] did not require the creation of a more formal agreement." (*Id.* ¶ 38). Based on the referral fee agreement with Defendants, Plaintiff claims he is entitled "to one-third of the total legal fee" recovered by Defendants. (*Id.* ¶ 44).

1    Three and a half years later, in June 2023, Plaintiff reached out to Kindley about the

2    status of the Hernandez case.  (*Id.* ¶ 40).  After some email correspondence, Plaintiff,

3    Kindley, and Hamparyan spoke over the telephone.  On that call, Defendants told Plaintiff

4    "they did not think [Plaintiff] deserved the promised 1/3 referral fee and asked him to take

5    less."  (*Id.* ¶ 41).  Plaintiff did not agree to renegotiate the fee.

6    In July 2023, Kindley informed Plaintiff that the Hernandez family had agreed to a

7    partial settlement.  (*Id.* ¶ 44).  On December 12, 2023, Plaintiff emailed Defendants and

8    urged them to honor the referral fee agreement.  The parties participated in a call on January

9    17, 2024, where Defendants told Plaintiff they had no obligation to honor the referral fee

10    agreement between Plaintiff and Defendants because the Hernandez family "did not

11    consent to the terms of division of a referral fee," as required by Rule 1.5.1.  (*Id.* ¶ 47).

12    On January 25, 2024, Plaintiff filed an action against Defendants in the United States

13    District Court for the District of Massachusetts.  *See Halks v. Kindley Firm, APC*, 766 F.

14    Supp. 3d 295 (D. Mass. 2025).  After Defendants filed a motion to dismiss for lack of

15    personal jurisdiction and failure to state a claim, Magistrate Judge Jennifer Boal issued a

16    report and recommendation that the district judge dismiss the case for lack of personal

17    jurisdiction grounds and otherwise deny the motion.  (R&R, ECF No. 1-8).  District Judge

18    Nathaniel Gorton adopted Judge Boal's R&R and dismissed Plaintiff's case for lack of

19    personal jurisdiction.  Plaintiff then filed the present action in this district on March 10,

20    2025, claiming fraudulent misrepresentation, violations of California Business and

21    Professions Code §§ 17200 and 17500 ("UCL"), breach of contract, breach of the implied

22    covenant of good faith and fair dealing, equitable estoppel, promissory estoppel, unjust

23    enrichment, negligent misrepresentation, and declaratory judgment.  (Complaint ¶¶ 61–

24    93).

## II.    LEGAL STANDARD

### A. Rules 12(b)(6) and 9(b)

27    Under Federal Rules of Civil Procedure 12(b)(6), a party may file a motion to

28    dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "To properly plead fraud with particularity under Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation modified).

### B. Judicial Notice

Federal Rule of Evidence 201(b) permits judicial notice of any fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  "A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.  But a court cannot take judicial notice of disputed facts contained in such public records."  *Khoja*, 899 F.3d at 999 (citation modified).

Defendants ask this Court to take judicial notice of Plaintiff's opposition to Defendants' motion to dismiss and Plaintiff's declaration in support of that opposition, which were filed in the District of Massachusetts case.  (ECF No. 7-2).  "Courts may take judicial notice of their own records, and may also take judicial notice of other court proceedings if they 'directly relate to matters before the court.'"  *Stewart v. Kodiak Cakes, LLC*, 568 F. Supp. 3d 1056, 1063 (S.D. Cal. 2021) (quoting *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136–37 (S.D. Cal. 2006)).  Accordingly, the Court takes judicial notice of the existence of filings in the District of Massachusetts case and the arguments made

therein.  The Court does not take judicial notice of the truth of the facts asserted in those briefings.

## III.    DISCUSSION

### A. Application of California Law and Rules of Professional Conduct

While the briefing reveals some confusion, it is apparent the parties do not dispute that California law and rules of professional conduct apply.  No choice of law arguments were advanced by the parties.  Accordingly, the Court will apply California law and rules.

Plaintiff argues that while the California rules of professional conduct apply, he is not bound by the them because he is not a member of the California Bar and has never practiced in the state.  (Complaint ¶¶ 1, 10 (alleging Plaintiff has never been a member of the California Bar and has not practiced in the state)); (Opp'n, at 16 (stating Plaintiff is "a member of the Massachusetts bar who has never practiced law in California")).  Plaintiff further argues he "did not provide or offer to provide any legal services" in California, as he entered a "pure referral fee" agreement with Defendants.  (Complaint ¶ 22); (Opp'n at 16).  A "pure referral fee" agreement exists when "one lawyer receives 'a percentage of a contingent fee for doing nothing more than obtaining the signature of a client upon a retainer agreement while the lawyer to whom the case is referred performs the work.'" *Chambers v. Kay*, 29 Cal. 4th 142, 148 (2002) (quoting *Moran v. Harris*, 131 Cal. App. 3d 913, 921 (2002)).  *See also* Cal. R. Prof. Conduct § 1.5.1, Executive Summary (stating a "pure referral fee" is "not contrary to public policy" because "'[i]f the ultimate goal is to assure the best possible representation for a client, a forwarding fee is an economic incentive to less capable lawyers to seek out experienced specialists to handle a case. Thus, . . . the client is benefited.'" (quoting *Moran*, 131 Cal. App. 3d at 913).  Massachusetts also permits referral fees.  *See* Mass. R. Prof. Conduct § 1.5(e).

Nevertheless, Defendants argue Plaintiff is bound by the California rules by virtue of Rule 8.5(a)-(b) of the Massachusetts Rules of Professional Conduct, which addresses "choice of law" and provides that when "the disciplinary authority" of Massachusetts is invoked for an attorney subject to its jurisdiction for conduct that has its "predominant

7

effect" in another state "the rules of that jurisdiction shall be applied."  Mass. R. Prof. Conduct § 8.5(a)-(b).  There are several problems with Defendants' argument.

First, the Massachusetts rule applies only to disciplinary proceedings before Massachusetts authorities.  No disciplinary proceedings have been initiated, let alone before Massachusetts authorities.  Second, the rule does not apply to civil lawsuits, like the present case.  *See* Mass. R. Prof. Conduct Preamble [20] ("Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.); *Saggese v. Kelley*, 445 Mass. 434, 441 (2005) (stating Massachusetts's fee-sharing rule is intended to protect clients, not attorneys, and "may not serve as the basis of [a] defense to [the plaintiff's] contract claim");[4] *see also Potter*, 588 A.2d at 896–97 (citing identical language to Massachusetts Preamble [20] in Delaware's rules of professional conduct and holding the rules "provide no bases for the enforcement of such duties outside the framework of disciplinary proceedings"); *Freeman v. Mayer*, 95 F.3d 569, 575–76 (1996) (same, applying Indiana rules).  Finally, while the Massachusetts rule extends its disciplinary jurisdiction to lawyers practicing in Massachusetts (licensed or appearing *pro hac vice*), it applies the rules of "another

---

[4] Defendants argue "a violation of MRPC is a defense to contract enforcement," citing *McLaughlin v. Amirsaleh*, 65 Mass. App. Ct. 873, 880–86 (2006) and *Rubin v. Murray*, 79 Mass. App. Ct. 64, 69 n.7 (2011).  But that overstates the holdings of those cases.  In *Rubin*, the court stated: "This court may refuse to enforce a contract or recognize a transaction entered into by an attorney that violates the law or public policy, including the policy expressed in the Massachusetts Rules of Professional Conduct and their predecessor.  This principle may be applied to the situation where an attorney [breaches fiduciary duties and] seeks to enforce a fee contract which the court finds was the product of overreaching and was excessive and unreasonable as a matter of law."  79 Mass. App. Ct. at 69 n.7 (citing *McLaughlin*, 65 Mass. App. Ct. at 800–85).  The holding in *Rubin* is based on violations of "law or public policy" generally, not violations of Massachusetts Rule of Professional Conduct 1.5 itself as a defense to enforcement of a contract claim.  In *McLaughlin*, the court made that point clear: "We decline to recognize or to give effect to the mortgage held and recorded by Lane, not because of any violation of either DR 5-103 or Mass. R. Prof. C. 1.8(j), but because we conclude that his actions in representing Mojgan and obtaining the mortgage violate the public policy of Massachusetts as embodied in those rules as well as other principles of law concerning the enforcement of contracts.  *Cf. Pettingell v. Morrison, Mahoney & Miller*, 426 Mass. 253, 256 (1997) (violation of rule of professional conduct does not preclude enforcement of forfeiture clause unless policy reason underlying rule compels different conclusion)."  65 Mass. App. Ct. at 885.

jurisdiction" only when the lawyer "provides or offers to provide any legal services in [that] jurisdiction." Mass. R. Prof. Conduct 8.5(a); Cal. R. Prof. Conduct 8.5(a) (same). Here, Plaintiff did not provide or offer to provide legal services to the Hernandez family in California; Defendants alone were charged with that responsibility. Plaintiff's investigation and search for local counsel in the San Diego Area to represent the Hernandez family and subsequent entry into a "pure referral fee" agreement does not constitute the practice of law within California.[5]

The district court in Massachusetts, when it had occasion to pass on Defendants' Rule 12(b)(6) arguments before dismissing the case for lack of personal jurisdiction, stated: "[Plaintiff] Halks is not a member of the California bar and, therefore, is not bound by the California Rules of Professional [Conduct] or expected to be familiar with them." *Halks*, 766 F. Supp. 3d at 311. This Court agrees. Defendants' argument that Plaintiff is bound by and charged with constructive knowledge of the California rules is therefore rejected. Even if Plaintiff had actual or constructive knowledge of Rule 1.5.1 (which he denies), he would not be bound by the rule as an attorney not admitted to the California Bar and not appearing *pro hac vice* in the Hernandez family lawsuit.

### B. Public Policy Favors Enforcement of the Alleged Referral Fee Agreement

Where attorneys not in the same law firm desire to split attorneys' fees, California requires that the client consent in writing to the division of fees, the attorneys involved, and the *amount* of the fee division between the attorneys. Specifically, the client must consent "in writing" to the "fact that a division of fees will be made"; the "identity of the lawyers or law firms that are parties to the division"; and the "terms of the division." Cal. R. Prof. C. § 1.5.1(a)(2). Here, there is no dispute the referral fee agreement between

---

[5] In *Birbrower, Montalbano, Condon & Frank v. Superior Court*, 17 Cal. 4th 119, 128 (1998), the California Supreme Court observed that the "practice of law" is client-centered and involves "the doing and performing [of] services in a court of justice" and providing "legal advice and legal instrument and contract preparation." *Id.* (citations omitted). Clearly, Plaintiff by entering a "pure referral fee" agreement with counsel was not practicing law or rendering legal services in California on behalf of the clients.

Plaintiff and Defendants and the Contingency Fee Agreement between Defendants and the Hernandez family failed to comply with Rule 1.5.1 because the Hernandez family did not consent in writing to the terms of the division of fees between Plaintiff and Defendants.[6]

However, Defendants' attempt—to use California Rule 1.5.1 as a shield against honoring an otherwise substantively unobjectionable contractual arrangement with an out-of-state lawyer who has not practiced in California—is unprecedented.  Defendants cite no authority in support of that proposition and the Court has found none.  While "a noncompliant [fee-splitting] agreement generally cannot be enforced by an attorney," *Barnes, Crosby, Fitzgerald & Zeman, LLP*, 212 Cal. App. 4th 172, 181 (2012), the shield to enforcement of such an agreement has been upheld only when *both* attorneys to the non-compliant agreement are members of the California Bar, *see id.*; *Chambers*, 29 Cal. 4th at 145; *Margolin v. Shemaria*, 85 Cal. App. 4th 891, 896 (2000), or, if not barred in California, are providing legal services in the state.  *See Joseph Saveri L. Firm v. Michael E. Criden, P.A.*, No. 14–cv–01740–EDL, 2015 WL 1029364, at *6 (N.D. Cal. Mar. 9, 2015) (declining to enforce fee-splitting agreement where out-of-state counsel "appeared *pro hac vice* in California courts numerous times" and swore that they were "familiar with 'the standards of professional conduct required of members of the State Bar of California'" (quoting N.D. Cal. local rule)).

In an analogous case, the Supreme Court of Delaware in *Potter*, 688 A.2d at 895, held that a Delaware attorney could not use a violation of Delaware Lawyers' Rule of Professional Conduct 1.5(e) regarding fee-splitting agreements as a defense to the

---

[6] Plaintiff asserts the referral fee agreement and Contingency Fee Agreement comply with Massachusetts's rules.  In Massachusetts, "[a] division of a fee (including a referral fee)" is permitted "if the client is notified" that a "division of fees will be made and consents to the joint participation in writing."  Mass. R. Prof. Conduct § 1.5(e).  It is undisputed that occurred here.  Further, Massachusetts *does* permit "referral fee[s]" and "does *not* require disclosure of the fee division that the lawyers have agreed to" unless "the client requests information on the division of the fees[.]"  Mass. R. Prof. C. § 1.5(e) cmt. 7A (emphasis added).  The record does not reveal that the Hernandez family ever requested information on the division of the fees.

enforcement of an agreement with an out-of-state lawyer not charged with compliance with that rule or a similar rule in his own jurisdiction (Pennsylvania). *Potter* initially was filed in the U.S. District Court for the District of Delaware. There, after Attorney Potter moved for summary judgment to preclude enforcement of a fee-splitting agreement, the district court denied the motion "based upon its prediction that the Delaware courts would hold, as a matter of public policy, that a violation of Rule 1.5(e), cannot be used to render an agreement to share fees unenforceable as a matter of law." *Id.* at 896. The Delaware Supreme Court validated the district judge's prediction and held:

> As a matter of public policy, this Court will not allow a Delaware lawyer to be rewarded for violating Delaware Lawyers' Rule of Conduct 1.5(e) by using it to avoid a contractual obligation. To hold otherwise would encourage non-compliance with the Rule and create incentives for malfeasance among Delaware lawyers at the expense of unwary out-of-state lawyers.

*Id.* at 897 (restating "a Delaware lawyer may not assert his non-compliance with [rule] 1.5(e) as a defense to an agreement with an out-of-state lawyer, not charged with compliance with that rule or a similar rule in his own jurisdiction"). That is precisely the circumstance here.[7]

Similarly, in *Freeman*, 95 F.3d at 569, the Seventh Circuit found a fee-sharing agreement that violated Indiana's rule of professional conduct could not be used as a shield against enforcement by an in-state attorney against an out-of-state attorney who jointly represented the clients but did not file and litigate the case in Indiana. There, the plaintiff,

---

[7] Defendants argue that the district court in *Saveri* stated, "Defendant has not pointed to any California case that adopted the reasoning of *Potter.*" 2015 WL 1029364, at *6. But in *Saveri*, the defendant lawyers had appeared "*pro hac vice* in California courts numerous times" and "[swore] that they are familiar with 'the standards of professional conduct required of members of the State Bar of California.'" *Id.* (quoting N.D. Cal. local rule). Thus, *Saveri* is materially distinguishable. Plaintiff here alleges he is not a member of the California Bar and has never practiced in the state. In addition, Defendants have not cited any California case that has addressed circumstances like the present case. Finally, the only case cited by the parties that has addressed analogous circumstances—*Freeman*, 95 F.3d at 569—was cited by *Potter* in support of its decision that an in-state attorney cannot use their rules of professional conduct to avoid a fee-sharing agreement with an out-of-state attorney who is "not charged with compliance with [the in-state] rule." 688 A.2d at 897.

an Illinois attorney, referred a significant injury case in Indiana to the defendant, an Indiana attorney. The plaintiff was not admitted to practice in Indiana, "although he had handled Indiana cases before on a *pro hac vice* basis." *Id.* at 570. After handling all matters for the clients for approximately 20 months, including "liability investigation [in Indiana], research, medical documentation, and personal conferences with the [clients], both at [plaintiff's] Lansing, Illinois office and in the[] [clients'] Indiana home," the plaintiff recommended to the clients that they retain the defendant to file and litigate the case in Indiana. *Id.* After the plaintiff consulted with the clients, they consented to the association of counsel and the fee arrangement between counsel. *Id.* at 570–71.

The court in *Freeman* observed that while "[w]e agree that the agreement between [counsel] may not have followed the letter of Rule 1.5(e) [as it was not in writing and failed to address the lawyers "non-proportional division of fees"], . . . we disagree with [defendant] that the consequences of this failure are so favorable to him." 95 F.3d at 574. *Freeman* further held "while there may have been a technical violation of the rule, it was no more than that, and the clients, for whose benefit the rule exists, were fully protected" because they acknowledged the association of counsel and the "[fifty-fifty] split of any fees" between the attorneys. *Id.* (holding "our best prediction is that the Indiana Supreme Court would not permit one of its attorneys to invoke Rule 1.5(e) as a shield against living up to a substantively unobjectionable contractual arrangement with an out-of-state lawyer"). The reasoning in *Freeman* applies here.[8]

*Potter* and *Freeman* cite identical provisions of the rules in Delaware and Indiana, which state that "[t]he Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to

---

[8] It appears Indiana Rule 1.5(e) is like Illinois Rule 1.5(e). Thus, *Freeman*'s determination to preclude use of a non-compliant fee-splitting agreement as a shield to enforcement is more expansive than *Potter*'s holding, where the court prohibited use of a non-compliant fee-splitting agreement as a shield to enforcement to circumstances in which the out-of-state lawyer was not charged with compliance with the in-state lawyer's rule "or a similar rule in his own jurisdiction." *Potter*, 688 A.2d at 897.

be a basis for civil liability." *Potter*, 688 A.2d at 896–97 (stating the rules "provide no additional bases for the enforcement of such duties outside the framework of disciplinary proceedings"); *Freeman*, 95 F.3d at 575–76 (observing the rules are for "guidance" in disciplinary proceedings, not "ancillary matters . . . [or] civil liability"). California's rule is similar, stating "[a] violation of a rule does not itself give rise to a cause of action for damages caused by failure to comply with the rule," Cal. R. Prof. Conduct 1.0(b)(3), but with a notable difference. The Comment to Rule 1.0 expands the use of the rules beyond disciplinary proceedings, stating:

> The Rules of Professional Conduct are intended to establish the standards for lawyers for purposes of discipline. Therefore, failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. Because the rules are not designed to be a basis for civil liability, a violation of a rule does not itself give rise to a cause of action for enforcement of a rule or for damages caused by failure to comply with the rule. *Nevertheless, a lawyer's violation of a rule . . . may have other non-disciplinary consequences*. (citing *Chambers*, 29 Cal. 4th at 161 [(precluding enforcement of non-compliant fee-sharing agreement in civil litigation)].

Cal. R. Prof. Conduct § 1.0 cmt. 1 (emphasis added) (citations omitted).

However, as discussed, the permitted use of California's rule in *Chambers* as a shield to enforcement of a non-compliant fee-sharing agreement in civil litigation was expressly limited to attorneys who were "both" members of the California Bar, and thus "bound by" its rules of professional conduct and "restrictions on the division of fees." 29 Cal. 4th at 160. *Chambers* stated:

> Were we to hold that the fee . . . may be divided as [the attorneys] agreed, with no indication that the required client consent was either sought or given, we would, in effect, be both countenancing and contributing to a violation of a rule we formally approved in order 'to protect the public and to promote respect and confidence in the legal profession.' . . . *Although [the plaintiff] complains that [the defendant] should not be permitted to take advantage of his own disregard of the Rules of Professional Conduct, . . . [the plaintiff] could have protected his interests, and at the same time fulfilled the beneficial purposes of the rule and acted in [the client's] best interests, by requesting*

> *proof of her written consent to the fee division before committing himself to*
> *her case.*

*Id.* at 158, 163 (emphasis added) (citations omitted) (noting the windfall of attorneys' fees to the defendant came about by the plaintiff's "equally disturbing neglect" of the rules to which he was bound).

Where an attorney is not bound by California's rules, and thus not "equally" at fault for non-compliance, a windfall of attorneys' fees to one bound by the rules would be unjust and unfair. The *Chambers* court, therefore, distinguished the circumstances present here where the referring attorney is not a member of the California Bar and is not subject to California's rules. *Id.* at 160 (discussing *Potter*, 688 A.2d at 897). After all, it would be fundamentally unfair to apply California's rules to an out-of-state lawyer not admitted to the California Bar and not appearing *pro hac vice*—as that lawyer is not "bound by" California's rules. More so, where, as here, the out-of-state lawyer has complied with his own state's rules and the clients' interests were fully protected.[9]

Defendants argue the non-compliant fee-sharing agreement should not be enforced because it "undermine[s] the consumer protection purpose of California Rule of Professional Conduct 1.5.1." But it does no such thing. In *Margolin*, 85 Cal. App. 4th at

---

[9] Plaintiff cites *Grasso v. Galanter*, No. 12–cv–00738–GMN–NJK, 2013 WL 5537289 (D. Nev. Oct. 4, 2013), *Edelson PC v. Girardi*, No. 20 C 7115, 2022 WL 3212329 (N.D. Ill. Aug. 9, 2022), and *Martin v. Holloran*, No. 05CV01857 AGF, 2010 WL 3054886 (E.D. Mo. Aug. 4, 2010), for decisions that are in "lockstep" with *Potter* and *Freeman*, but they are distinguishable because they involve lawyers who were *all practicing in the state* whose rules of professional conduct were at issue. In those cases, either the in-state jurisdiction permitted the fee-sharing agreement while the out-of-state jurisdiction did not, (*Edelson* and *Martin*), or the district court applying in-state rules declined to follow *Chambers* and allow use of its rules of professional conduct to avoid enforcement of a non-compliant fee-sharing agreement (*Grasso*). Plaintiff also cites *McIntosh v. Mills*, 121 Cal. App. 4th 333 (2004), *Cain v. Burns*, 131 Cal. App. 2d 439 (1955), and *Emmons, Williams, Mires & Leech v. State Bar*, 6 Cal. App. 3d 565 (1970), for the proposition that "California courts have long enforced fee-splitting agreements that do not comport with the California Rules where the at-fault parties were bound to follow the Rules, and the harmed parties were not." (Opp'n at 10). While true, those cases have limited persuasive value because they all involve *non-lawyer* plaintiffs and animate different rules of professional conduct and policy considerations.

903, a case involving a pure referral fee, the court explained the purpose of California's fee-sharing rule:

> Just as a client has a right to know how his or her attorney's fees will be determined, he or she also has a right to know the extent of, and the basis for, the sharing of such fees by attorneys. *Knowledge of these matters helps assure the client that he or she will not be charged unwarranted fees just so that the attorney who actually provides the client with representation on the legal matter has 'sufficient compensation' to be able to share fees with the referring attorney.*

*Id.* at 903 (emphasis added); s*ee also Barnes*, 212 Cal. App. 4th at 180 (stating the purpose of the rule is to "protect clients from their attorneys' potential conflicts of interest created by fee-sharing agreements" and "motivate an attorney [not] to charge excessive fees or to make tactical decisions unfavorable to the client's interests").

Here, the clients signed the Contingency Fee Agreement, thus consenting not only to joint representation by Defendants and fee-splitting between those attorneys,[10] but also to the referral by Plaintiff and payment by Defendants from the total legal fees recovered to Plaintiff for referral of the case. The clients' interests were fully protected by this disclosure. Accordingly, where a technically non-compliant fee-sharing agreement involves a California lawyer and an out-of-state lawyer not practicing in California, and not charged with compliance with Rule 1.5.1 or a similar rule in their own jurisdiction, this Court's prediction is that the California courts would hold, as a matter of public policy, that a violation of Rule 1.5.1 cannot be used to render a pure referral fee agreement unenforceable as a matter of law. This Court so holds for purposes of this motion and proceeds to the claims alleged by Plaintiff.

---

[10] It is unclear whether Defendants themselves complied with Rule 1.5.1 as to the Hernandez family. The Contingency Fee Agreement states that Defendants will "split the fees" but it does not clarify what the split is between Defendants: 50-50, 60-40, or some other percentage?

## C. Claims at Issue

### 1. Breach of Contract

Under California law, a breach of contract claim requires showing "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1230 (2023) (quoting *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008)). "The essential elements of a contract are: '1. Parties capable of contracting; 2. Their consent; 3. A lawful object; and, 4. A sufficient cause or consideration.'" *Id.* (quoting Cal. Civ. Code § 1550).

Plaintiff sufficiently alleges a contract—the referral fee agreement—with Defendants given the exchange of emails and the parties' course of conduct. Plaintiff alleges he performed his side of the bargain by successfully referring the Hernandez family as clients to Defendants, a referral that is expressly authorized by Rule 1.5.1. Defendants allegedly breached the contract by refusing to pay Plaintiff the one-third referral fee, and Plaintiff suffered damages as a result. Accordingly, the Court declines to dismiss Plaintiff's breach of contract claim.

### 2. Implied Covenant of Good Faith and Fair Dealing

"Generally, every contract . . . 'imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 798 (2008) (citation omitted). "[T]he burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Daly v. United Healthcare Ins. Co.*, No. 10–CV–03032–LHK, 2010 WL 4510911, at *3 (N.D. Cal. Nov. 1, 2010) (citation omitted). "The precise nature and extent of the duty imposed will depend on the contractual purposes." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (internal quotations omitted).

Where, as here, the alleged breach of the implied covenant is based solely on a breach of an express term of the contract, California courts have held the breach of the implied covenant claim to be "superfluous." *See Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317,

327 (2000) ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach, is superfluous."). Plaintiff's implied covenant claim is entirely grounded on Defendants' breach—their failure to pay him the referral fee. (Complaint ¶¶ 71–74). Accordingly, the Court **DISMISSES** this claim with leave to amend.

### 3. Equitable Estoppel

Under California law, "[t]he doctrine of equitable estoppel is founded on [t]he vital principle . . . that [a person] who by his [or her] language or conduct leads another to do what he [or she] would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he [or she] acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both." *Blaser v. State Tchr.'s Ret. Sys.*, 86 Cal. App. 5th 507, 528 (2022) (cleaned up). "The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he [or she] must intend that his [or her] conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he [or she] must rely upon the conduct to his injury." *Id.* (citation modified).

Plaintiff alleges Defendants prepared the Contingency Fee Agreement that contained language referencing Defendants' agreement to pay Plaintiff a referral fee, (Ex. 4, at 2), and Defendants represented to him that the Hernandez family signed the agreement. (Complaint ¶ 35). Defendants, as members of the California Bar and having drafted the agreement, were allegedly aware that the agreement's reference to the referral fee violated Rule 1.5.1 because it did not specify the amount of the referral fee. Defendants' sole reason to promise the referral fee and represent that the Hernandez family consented in writing to it allegedly was to induce Plaintiff's referral of the case to Defendants. Plaintiff alleges he was ignorant of California's client disclosure requirement regarding the amount of the referral fee as he was not admitted to the California Bar and did not practice in the state. Plaintiff further alleges he reasonably relied on Defendants' misrepresentations to his

detriment. As discussed, under the circumstances alleged, Plaintiff was neither bound by California's rules nor expected to know them. Accordingly, the Court finds that Plaintiff has sufficiently alleged equitable estoppel.

### 4. Promissory Estoppel

"Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'" *Cotta v. City & Cnty. of S.F.*, 157 Cal. App. 4th 1550, 1566 (2007) (quoting *Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000)). It is unclear to the Court why equitable principles would need to be employed to satisfy the requirement of consideration when consideration—referral of the case for a referral fee—is plainly alleged. Accordingly, the Court **DISMISSES** this claim with leave to amend.

### 5. Unjust Enrichment

"When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.* 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Nonetheless, "a plaintiff may not 'pursue or recover on a quasi-contract claim if the parties have an enforceable agreement [on] a particular subject matter.'" *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 983 (E.D. Cal. 2018) (quoting *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012)). "[T]o state a quasi-contract claim for restitution or unjust enrichment, [Plaintiff] must plausibly allege the absence of any applicable and enforceable contract provisions, even if in the alternative." *Id.* at 984 (citation omitted). Here, Plaintiff's theory is that the referral fee agreement *is* enforceable despite its failure to comply with Rule 1.5.1. Accordingly, the Court **DISMISSES** this claim with leave to amend.

### 6. Fraudulent and Negligent Misrepresentation

Under California law, a fraudulent misrepresentation claim requires showing: "(a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud or induce reliance;

(d) justifiable reliance; and (e) resulting damage." *Knight v. Aqui*, 966 F. Supp. 2d 989, 1001 (N.D. Cal. 2013) (citing *Charnay v. Cobert*, 145 Cal. App. 4th 170, 184 (2006)). A negligent misrepresentation claim is similar to a fraudulent misrepresentation claim "except for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." *Charnay*, 145 Cal. App. 4th at 184.

Defendants contend that the non-compliant fee-sharing agreement negates Plaintiff's tort claims because "[a]n attorney may not skirt Rule 1.5.1's requirements by seeking recovery of a referral fee through a tort or other action, rather than a breach of contract claim." (Motion, at 17). Defendants cite to *Margolin*, 85 Cal. App. 4th at 891, for the proposition that Plaintiff "cannot state claims for fraudulent misrepresentation, equitable estoppel, promissory estoppel, or negligent misrepresentation" because he cannot plausibly allege reasonable reliance on Defendants' alleged promise to obtain written client consent to a non-compliant referral agreement that failed to disclose the amount of the referral fee. (*Id.* at 17–20). In *Margolin*, relief was denied because "[the plaintiffs] could have protected themselves by providing [the client] with the required written [fee-sharing] disclosure and obtaining her consent." 85 Cal. App. 4th at 902. But that reasoning, as discussed, is limited to attorneys who are all admitted to the California Bar and responsible for compliance with the rules, which is not the case here.

If Plaintiff were presumed to have knowledge of Rule 1.5.1, then his reliance on Defendants' representation would be unreasonable since he should have known the referral fee amount had to be disclosed and taken action to protect himself. However, Plaintiff is not expected to know California's "terms of the division" disclosure requirement because he never practiced in the state and is not bound by the rules. Accordingly, *Margolin* is of no assistance to Defendants.

Further, the Court finds that Plaintiff has sufficiently alleged fraudulent misrepresentation under Rule 9(b)'s heightened pleading standard. Plaintiff alleges that

the Kindley firm participated in the negotiation of the referral fee, as reflected in the subsequently proposed Contingency Fee Agreement. (Complaint ¶¶ 14–39). Defendant Kindley allegedly acted on behalf of Defendant Hamparyan firm, having conveyed to Plaintiff the Hamparyan firm's amenability and eventual agreement to the proposed agreement. (*Id.* ¶¶ 16–20). According to Plaintiff, Kindley's representation that the Hernandez family had consented in writing to the referral fee agreement was false, Defendants knew the representation was false, the falsity was meant to defraud Plaintiff and induce his reliance, Plaintiff's reliance was justified under the circumstances, and damages resulted from the falsity. Plaintiff has sufficiently alleged fraudulent misrepresentation in accordance with Rule 9(b). Having stated a claim for fraud, Plaintiff has also stated a claim for negligent misrepresentation.

### 7. UCL Claim[11]

California's UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "Under the statute 'there are three varieties of unfair competition: practices which are unlawful, unfair or fraudulent.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009) (citation omitted). The UCL's "language is 'broad' and 'sweeping' to 'protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320 (2011)).

Defendants argue that Plaintiff has failed to state a UCL claim because Plaintiff only seeks damages, which is not permitted under the UCL statute. (Motion, at 24–25). Defendants further argue that, to the extent Plaintiff seeks injunctive relief, he has failed to

---

[11] Plaintiff agrees to not oppose dismissal of his § 17500 claim. (Opp'n, at 29 n.8). Accordingly, the Court dismisses that claim.

allege he would be subject to any "future harm" from Defendants' purported unfair competition practices. (*Id.* at 26). Plaintiff acknowledges he is not seeking injunctive relief, but contends he has sufficiently alleged restitution. (Opp'n, at 28–29).

"A Court awarding restitution under the California consumer protection laws has 'very broad discretion to determine an appropriate remedy as long as it is supported by the evidence and is consistent with the purpose of restoring the plaintiff the amount that the defendant wrongfully acquired.'" *Chase v. Hobby Lobby Stores, Inc.*, No. 7-cv-00881-GPC-BLM, 2017 WL 4358146, at *10 (S.D. Cal. Oct. 2, 2017) (citation omitted). "Restitution under the UCL is consistently awarded with the goal of 'restoring' plaintiffs with money wrongfully taken as a result of defendant's unlawful practices." *Id.* (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1147–48 (2003)). Under California law, "'[t]he concept of . . . restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person.' Instead, restitution is broad enough to allow a plaintiff to recover money or property in which he or she has a vested interest." *Korea Supply Co.*, 29 Cal. 4th at 1149 (citation omitted).

Plaintiff has sufficiently alleged a vested interest in the attorneys' fees recovered by Defendants based on their wrongful withholding of the agreed upon referral fee. While the client agreement initially was contingent, Plaintiff's interest in the referral fee vested once partial settlement occurred and funds were received by Defendants. Accordingly, the Court declines to dismiss Plaintiff's UCL claim on this ground.

Plaintiff's Complaint, however, fails to identify a theory of liability. As noted, there are three varieties of unfair competition: practices that are unlawful, unfair, and fraudulent. Having failed to allege a theory of liability under the UCL, the Court grants Defendants' motion with leave to amend.

### 8. Claims against Defendant Hamparyan Injury Lawyers

Defendants seek dismissal of the Hamparyan firm on grounds that "there is simply no allegation the Hamparyan Firm engaged in any activity which caused any of [Plaintiff's] purported damages." (Reply at 9). But as Plaintiff points out the Complaint alleges the

Hamparyan firm's involvement in the negotiations and wrongdoing "detailing dates, speakers, benefits received by Defendants, and method of communication between the parties." (*See* Complaint ¶¶ 14, 16–21, 26, 30–37, 41, 44, 47–48, 56, 86–88).

As stated by the district court in Massachusetts:

> The Complaint alleges that Kindley acted as an agent of the Defendants in soliciting a referral from Halks by promising to pay a referral fee. Hamparyan was copied on an email that the Kindley Firm sent to Halks in Massachusetts, which confirmed in writing that both Defendant firms would pay Halks the referral fee. In addition both firms drafted and entered into the contingency fee agreement that allegedly intentionally omitted the provision informing the client about the terms of the fee division. Therefore, the Complaint sufficiently states a claim against the Hamparyan Firm. Finally, to the extent that the Defendants argue that Halks' claims of misrepresentation do not comply with Rule 9(b) of the Federal Rules of Civil Procedure, this Court disagrees. The Complaint alleges the dates, speakers, and place or medium of the communications that form the basis of Halks' claims.

*Halks*, 766 F. Supp. 3d at 311. This Court agrees, and finds Plaintiff has sufficiently alleged claims against Defendant Hamparyan Injury Lawyers.

## IV.    CONCLUSION

For these reasons, Defendants' motion is **DENIED** as to Plaintiff's claims for breach of contract, fraudulent misrepresentation, negligent misrepresentation, and equitable estoppel. Defendants' motion is **GRANTED** as to Plaintiff's claims for breach of the implied covenant, promissory estoppel, unjust enrichment, and violation of UCL § 17200 with leave to amend, and **GRANTED** as to Plaintiff's UCL § 17500 claim without leave to amend. Plaintiff may file an amended complaint within **fifteen (15) days** of the filing of this Order.

**IT IS SO ORDERED**.

Dated: July 10, 2025

Hon. Dana M. Sabraw
United States District Judge